## Elgin, J. & E. Ry. Co. v. D. F. Eselin.

1. RAILROAD COMPANY--*Coupling Cars.*--The business of coupling cars is very dangerous, and it is a duty which railroad companies owe to their employes to use great care in furnishing the best coupling appliances, and in keeping them in good repair.

2. SAME--*Duty to Brakeman.*--A brakeman contracting with a railroad company for the performance of his duties as such, assumes such risks as are incident to the discharge of his duties. It is the duty of the company to use all reasonable care to keep its couplings in good repair and to furnish safe appliances, and it will be liable to the brakeman for any injuries he may receive on account of its failure to perform this duty, provided the brakeman himself is not negligent in not knowing the condition of the couplings.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the May term, 1896. Affirmed. Opinion filed December 9, 1896.

E., J. & E. Ry. Co. v. Eselin.

Williams, Holt & Wheeler, attorneys for appellant.

James B. McCracken and Albert M. Cross, attorneys for appellee.

Mr. Justice Lacey delivered the opinion of the Court.

This was a suit by appellee against appellant to recover damages alleged to accrue to him, a brakeman, for injury received by him for being mashed through the hips, between two cars, while attempting to couple an engine tender onto a freight car, by reason of the coupling apparatus of the car he was coupling being out of repair.

It was alleged in the declaration, and there was proof tending to show, that there was no washer over the stem of the draw-bar on the vacancy between the back end of the draw-bar and the forward plate, by reason of which the cars came too close together to admit of the body of appellee being between the cars while coupling without being injured.

It was also averred in the declaration, and the proof tended to show, that there was need of blocks on the beam at the hind end of the engine-car and between that and the "nigger-head," so called, where it was bolted onto the beam in order that there would be sufficient space between the cars when being coupled to prevent injury to the coupler.

· It appears from the evidence that by reason of the coupling apparatus being out of repair the cars came together within nine to thirteen inches where being coupled, when they should not have come nearer together than from sixteen to twenty inches.

The evidence tended to show that the appellee was unacquainted with the condition of the draw-bar on the freight car and also with the engine on which he was riding after it was promised to be repaired.

The evidence tends to show that appellee's contention that he was injured on account of the negligence of the company in using cars with a dangerous coupling apparatus was correct, and that appellee was in exercise of ordinary care, in

using the engine and in coupling the cars, for his own safety. There are a number of objections urged by appellant against the ruling of the court on the admission of evidence. The supposed errors, if any, were of trifling character and could not have affected the verdict. The rulings of the court, however, we regard as correct.

There is no complaint made on the part of the appellant on account of giving or refusing instructions by the court.

The verdict was for $12,000, and under the requirements of the court there was a remittitur of $7,000, and judgment rendered on the verdict for the plaintiff for $5,000.

It is insisted that the evidence fails to support the verdict in the particulars, first, that there was no sufficient evidence to establish the fact that the coupling apparatus on the two cars was out of repair, as alleged in the declaration, and second, that appellee failed to prove the exercise of reasonable care for his own safety and was therefore guilty of contributory negligence.

It appears from the evidence that the appellee in coupling the cars was riding on the back end of the engine, with his feet on the brake-beam of the engine and his right arm over the ladder, and that he hung there in that way, making ready to guide the link on the engine into the draw-bar of the freight car with his left hand. The brake-beam hung back under the engine at least a foot under the end of the tender, and there was no foot board on the tank of the engine. The upper portion of his body was sustained by his right arm thrust through an iron ladder, running up the back of the tank on the top of the tender, and holding his lantern in his right hand, it being in the night time. The engine was moving very slowly and as the sills came together appellee was squeezed through the hips.

It is insisted that this was a dangerous position for the appellee to occupy, and that if appellee did occupy such a position he was negligent in not holding his body more squarely with the end of the cars, instead of standing in a diagonal position, whereby the wide part of his body would be presented to be squeezed by the cars. We do not think

this contention can be maintained. It was a question for the jury, and the evidence tended to show that the position appellee maintained in riding on the tender to make the coupling was safer than it would have been if he had been on the ground standing between the cars, for the track was rough and it was in the night time, and he stood the same danger of being squeezed by the imperfect coupling apparatus, and appellee had no reason to suspect that the coupling apparatus was out of repair.

We think that the jury was justified in finding that a coupling apparatus so arranged as to allow the ends of the cars to come within nine to thirteen inches of each other when being coupled was imperfect and dangerous, and that appellant with proper care should have known the condition of the cars and repaired the coupling, and that it was justified in finding that appellee was in nowise negligent in not discovering the defective conditions of the cars himself.

The evidence tended to show that this was the first time that he had ever made a coupling of this tender to this car, and that it was the first trip he had ever made with them.

The business of coupling cars is very dangerous at best, and a railroad company should use great care in furnishing the best coupling appliances and in keeping them in good repair. They owe this duty to their employes.

While it is true that appellee, in contracting for the performance of such hazardous duties as he was performing, assumed such risks as were incident to their discharge, yet it was the duty of the company to use all reasonable care to keep its machinery in good repair and to furnish safe appliances, and it would be liable to appellee for any injuries he might receive on account of failure to perform this duty, provided he was not negligent in not knowing the condition of the cars, in which case he would be held to assume the risk himself. But as we have before stated, we think the jury was justified in finding these points in favor of the appellee. It will not be necessary for us to examine the evidence in detail for the purpose of reconciling contradictions in it. It is sufficient, however, to say that we think the jury was justified in its verdict.

As to the measure of damages, we think the evidence sustains the verdict on that point after the remittitur.

It tended to show a case of chronic hip-joint disease in its early stages occasioned by the accident and that appellee's injuries were permanent.

Seeing no error in the record the judgment of the court below is affirmed.